We'll call the next case Patricia Young versus the Pleasant Valley School District. Ms. Pollock. Yes, hi your honor. May it please the court, my name is Cynthia Pollock and I represent the plaintiffs Patricia Young, William Young, and their minor daughter, Megan Young. I reserve three minutes for rebuttal. That request will be granted. Thank you. Your honors, this is a case about a 16 year old minor who rightfully reported the sexual misconduct of her high school teacher and as a result she was harmed and after eight people heard all the evidence and deliberated and found in her favor and told her she was right and she was harmed, then the trial court took away her verdict. Did the trial court take away that verdict because of your consistent misconduct, Ms. Pollock? That's a harsh starter, but when you say the trial court took it away, that's the finding that Chief Judge Kain made, right? Yes, she made that at the end. She had first stated that it was against the weight of the evidence, but I will talk about my alleged misconduct. Because even if Judge Kain was incorrect in undertaking a sufficiency of the verdict, assume for the sake of discussion that was an incorrect step by the judge. Did the judge not have the power to say under Rule 59, attorney misconduct undermined the verdict here? No. And why I say that for a few reasons. Of course, before you answer, our standard review of her decision is abuse of discretion. I agree. It is a tough standard, however, I can meet it here. Why? Because according to your case law, in Hanover-Potato case, incorrect legal standards are focused on improper considerations, is abuse of discretion, and you can... What's the improper consideration? The fact that the court took issues with my alleged misconduct that wasn't even objected by the defendant. Well, there were 140 objectionable questions that you asked during this trial, correct? I would say no. Well, they were objected to, right? They were objected to. And they were sustained by the district court. According to the district court, you asked 140 objectionable questions during this five-day trial, correct? And I would disagree with the court's ruling on several of them based on the fact that... How many of the 140 rulings were wrong? I couldn't give you a specific answer. Can you ballpark 20, 30, 50? Can you ballpark it? Well, in this trial, there was not a lot of reasons why an objection was made. An objection was made, it was sustained instantly. The trial took five days, right? Correct. Okay, that's quite a number in five days. Your Honor, if you looked at the summary by the defendants, it started out with a lot of objections, but then by the end, most of it was... Okay, you said that the first thing you said, they didn't object, but there were objections. But they also, the other side made the motion for the mistrial. They're the ones who asked for the new trial based on attorney misconduct, did they not? No, because they never, ever asked for a mistrial. And this is where... After the trial, post-trial they did. And that would be after the fact. You have to ask for a mistrial during the trial. All right, but that's the question the judge had in front of her. And isn't the judge who tried this case, who sat with you for five days, who heard the 140 questions that were asked, that were... Objections were sustained. Wasn't that person in the best position to make a determination as to whether or not your misconduct impacted the jury's determination? No, because the defendants would have moved for a mistrial if my conduct was so prejudicial. The defendants had an obligation to move for a mistrial. They won the objections. So it's unheard of that they get a new trial based on objections being sustained. They had to ask for a mistrial. So you're saying they were barred from making a Rule 59 motion because they failed to move for a mistrial? Yes, I would say that. What case says that? What law? Well, I would say that the Yehan case, which they did seek a new trial. Yohanan? Yes, I apologize. Yohanan says that if you fail when a counsel's asking inappropriate questions and you don't move for a mistrial, then you're barred from making a Rule 59 motion. That's what Yohanan says? Well, it says that they sought a new trial along with the Rule 50B judgment as a matter of law. And this circuit said that if you don't ask for a move at the time at trial, then you're wholly barred from... For a Rule 50 motion. That's Rule 50. But in that case, if you read the opinion, it's a 59 as well. No, but it's very specific. Yohanan is extraordinarily specific in talking about sufficiency of the evidence challenges. The problem in Yohanan was there was no sufficiency of the evidence motion made under Rule 50 and you couldn't sneak in a sufficiency of the evidence argument under Rule 59. But this is not a sufficiency of the evidence argument. This is a statement that the trial itself was undermined by persistent failure to lay foundations for questions and to articulate evidence or what would purport to be evidence in front of the jury that wasn't actually in front of the jury because there was no foundation. That I understood to be sort of the gist of all this. What's wrong under Rule 59 with the trial judge saying, yes, on the basis of the motion made that you undermined that, I agree, there should be a new trial? Because, Your Honor, she ruled that I had... Her issues with me were my closing, which was never objected to by the defendants, and also the fact that I had used the term female masturbation during the trial. Well, it was much bigger than that. I mean, Judge Hardman has just laid it out. She goes through, at some length, quoting passages from the trial transcript where objection is made, objection is sustained, the very next question or the next series of questions flies in the face of the objection that was just sustained. Those are... I guess I'm searching for the abuse of discretion hook you want us to latch on to to say that's an inappropriate thing for a trial court to look at that was wrong for her to do. I am telling you that for her to go outside the objections and the basis for the new trial and find that I committed all these errors that were never addressed in their motion, nor did they ever present a mistrial, a request for mistrial, that is where the abuse lies because that's improper consideration. All right. You lost that question in front of Judge Kain, and she granted a new trial, and you had a chance to start over again. Okay, what I want you to address here, because we're not going to give you all day here this morning, why was Judge Brand wrong in granting the motion for summer judgment in your 1983 case against Mr. Smith? Because of the fact that I had won at trial, and it would be turning the federal rules on their head because if they couldn't get a judgment as a matter of law, how could they then get summer judgment? Didn't Judge Kain say in her opinion that if the Rule 50B motion had been properly made at the end of trial, she would have reviewed it for Rule 50B? Because since it wasn't, she only reviewed it under Rule 59. She actually made credibility decisions and actually found in favor and believed all the excuses of the defendant, Smith. On a motion for summer judgment, you cannot believe everything he says. I understand that, okay. So I believe that it's improper based on the fact that after a full-blown trial, and all that was granted was a new trial, you couldn't then— Okay, if we ever recognize this tort, is there a case— I can't find any Third Circuit case on the Title VII case in the educational context that we have recognized a claim such as the one you brought against Teacher Smith. Well, it is under the Equal Protection Clause, and I did submit all the evidence and the case law to be able to get through the first summary judgment and to— We're talking about the second. Again, it is the Equal Protection. There is a claim for hostile educational environment, so therefore— But which case, which Third Circuit case do you rely on that lays out the parameters of the claim that you're seeking to bring against Mr. Smith? Judge Bundley, in his decision, talked about how that you look towards Title VII, so you can look at anything. You can look at Hurley. You can look at any Third Circuit decision that you have decided that permits a hostile educational claim. It's not a work claim, but it's in the context of a 1983 municipal entity, in a sense of a school district, and a teacher that has admittedly— Okay, if you're correct, and if Judge Brand was wrong in granting summary judgment in your claim against Mr. Smith, you still had a claim that went before the jury against the school district and Mr. Gress, correct? No, only Gress. Only Gress. So the school district claim was directed—it didn't get to the jury, but it was tried before the school district and Gress, correct? No, because that never got to a jury. I understand, but what was that claim? That was a claim of the fact of a 1983 First Amendment retaliation case. Retaliation. Yes. The school district and Gress were part of that case, correct? Yes. Okay, and the claim against the school district never got to the jury. Correct. And the claim against Gress did, and the jury fined for Gress. Correct. Now, in that case, you didn't have the claim against Mr. Smith, so you also did not have the materials that you allege created the hostile environment. Correct. All right. And we claim it was an error because how can one understand what you're complaining about when you don't know the context? Did you attempt to get those materials before the jury? Absolutely. And Judge Brand did grant their motion to eliminate. There was something like 13 motions. Okay, that was in the motion to eliminate. Okay. Had to surpass, and at the first day of trial, he ordered that none of the photographs, no evidence would come in, and that was that. So I had to try my case within that. Let me ask you a follow-up to Judge Fisher because, I mean, one of the things that's troubling to me about this case is that your client suffered tremendous retaliation, and Judge Cain acknowledged that, but problematic for your case was that that retaliation was from fellow students who ostracized Ms. Young and the demonstration on a Saturday on Route 209. Help me with how that evidence is tied up to the conduct of the school district or Mr. Smith. You know, I've read the transcript. It was a long trial, and I had trouble finding evidence of the retaliation by these defendants. I mean, there was tons of evidence that the, as I said, the classmates and the community at large retaliated against this family, which was a horrific thing. But show me where the evidence is against these defendants. When the defendants stood up and commended all the students for doing the pep rally in support of Defendant Smith, instead of taking the side of the minor young, the minor child, which was But the testimony at trial was the Monday morning, you know, loudspeaker commendation was regarding the decision of the students not to walk out. That is what Gress had stated what the testimony was. Where's the testimony to the contrary of that? My client said, and I actually have it in the reply brief, that there was no comment, you know, loudspeaker about her and that she stood up or did the right thing. So the failure to commend her for her standing up for what was right, that's the retaliation, the failure to commend her? Well, the retaliation was allowing Defendant Smith to show a whistleblower video that specifically says, you know, you're going to be shunned by society if you blow the whistle when his whistle was blown by the minor plaintiff. All right. No, I think that's an important point for us to follow up on. So that may indicate that Judge Brand should have allowed the jury to decide whether Mr. Smith retaliated, because that seems to be an issue where reasonable minds could differ. Mr. Smith's theory is, well, I'm teaching Watergate, and your client's theory is, wait a minute, you were doing this to intimidate, and the video was not part and parcel of the YouTubes and the other PowerPoints that he had previously done. I think you marshaled the evidence to show that this was recently created while he was on suspension. So that might demonstrate why a trial needed to be held against Mr. Smith. But, again, how do you tie that to the school district? Because I didn't see any evidence in the record that the school district was culpable there. They approved it. And Defendant Smith, I have all his testimony saying they approved everything I did. They approved, they allowed me to show this whistleblower video while he was on suspension and not supposed to be on property. So I have his testimony. I also have the testimony that there was a custom that they allow these videos in when someone's not teaching. Well, that conduct was approving and making an official decision that harmed the plaintiff. And about the children, they specifically sent an email to Principal Gress to tell them, like, our little girl is getting bullied here, what are you going to do about that? Not once did anybody from the district contact them and said, who's bullying you? Tell me about what it is. So wait, wait, wait. This gets back to the question of the failure. Okay, so you're saying that the failure to do something was a retaliation? Well, I'm saying that... Please, stick with me. You've just cited a failure. I'm trying to hone in on that. Do you have a legal cite that you can give us for the proposition that a failure to do something amounts to a retaliation? Your Third Circuit instructions say inactions or actions. In this case, we had specifically asked them to help this child because of the fact she was getting bullied at school. And the school district did nothing, didn't help her, didn't try to have her finish her last year at her high school that she had been, you know, the district she had been with for 11 years. Would you respond to this statement from Chief Judge Cain's opinion? She said the court is sensitive to the fact this conduct did not take place among adults in a workplace, but by an adult to students in a public classroom. However, at the same time, the court is wary of the chilling effect of subjecting legitimate, even borderline decisions regarding curriculum to routine federal judicial review. Even... Assume for the sake of discussion, we would agree with you that this was very problematic. How would we even frame something in the way of an opinion that would not open the courts up to being overseers of high school social studies curriculum? What this man did was well beyond just exercising some discretion on topics. It's not like it was a professor in a university. It was minor children in the public classroom, and his misconduct takes it far away from just reviewing standard social studies class. So you don't have to even worry about that because it has no chilling effect. Well, we do have to worry about it. I mean, Chief Judge Cain, she's a very sensible, thoughtful jurist, and she said, I'm concerned about this, and I think we ought to be concerned about it too. So I'm asking you again, how would you frame a rule or a statement of law that would not put the court in the position of having to referee what is and isn't appropriate curricula in high school social studies class? Go by the standards of Title VII. If it can't happen in a workplace, how could it ever happen in a public classroom with minors? I see my time's up. But isn't context important? I mean, I think it was the Supreme Court that made the reference to, you know, a football coach patting a guy on the buttocks is perfectly fine in that context, whereas it would be completely wrong in a workplace or in a school. So, I mean, here it is sort of hard to teach 20th century history without talking about violence and war and the Nazis and the sexual revolution and the flappers. I mean, if you're going to teach the 20s, I guess you have to talk about the flappers. I'm not suggesting that this teacher may not have crossed the line periodically. I'm not suggesting that. But you can see that, to Judge Jordan's point, we're dealing with some fine distinctions here, and reasonable people would draw the line at different places. I would disagree only because this is a public classroom with minor children. It's not an adult workplace, an adult college professor classroom. It's a minor 16. They don't have consent. You can't be showing and saying sexual misconduct. What he did, he talked, you know, about sexy Sadie, showed images of, talked about the cigar, putting a cigar up, and Monica Lewinsky related to the presidency. So someone in a high school history class can't teach what's on the front page of newspapers all over the country as something that apparently the media thinks is of historic import? Certainly they can't talk about it and say, did he save it or did he smoke it? That's inappropriate. If you want to go home and have your parents show you those type of materials, that's fine. But in a public classroom for minor children, you should not be showing and saying sexually offensive material, which he admits was offensive. He showed people with their heads cut off and cut from their sternum to their vagina. He showed that to minor children. And the minor children during the interview said that they didn't want to see it. That's inappropriate, and so they're not showing anything. Ms. Pollack, we'll have you back on rebuttal. Thank you, Your Honors. Mr. Collins or Ms. Collins? Either way. Good morning. I'm Keely Collins. I'm here on behalf of Bruce Smith. Thank you so much for hearing our argument today. First of all, I'd like to start out by reframing the issues. Ms. Pollack started her argument by telling this Court that this is a case of sexual misconduct. This is a case of a high school curriculum. I'm sure you'd like to reframe it that way, but we're presented with a case where a teacher offers, as part of the 20th century history class, his own memoirs about losing his virginity in pretty graphic detail, his own screenplay that involves a variety of things that one might question their relevance to 20th century American history. I'll bet you that every person in this room with a little preparation could teach a four-month class on the 20th century American history without once showing a beheaded, naked woman's body gutted or the bloody, stab-wounded, trussed-up-like-a-turkey body of Sharon Tate. It's possible to teach a 20th century history class without asking the girls what kind of underwear they'd wear in a pillow fight. So this is about misconduct in the classroom. There was plenty of evidence of misconduct in the classroom. The question that you've got to answer on behalf of your client is, why wasn't there enough, as Judge Munley said in his original summary judgment decision, for this to be made a matter of decision by a jury and not by one judge saying, eh, not enough? Yes, Your Honor. I'll start out, first of all, by putting it in the context that there are no issues of fact as to whether there was a hostile environment here, and I'll address each one of your concerns. First of all, starting out with the memoirs and with the Dark Horse book, I think if my client were here today, he would tell you that he apologized. That was crossing the line. But neither of those things were part of Ms. Pollack's client's environment. She did read in the book. Judge Cain said, I credit her testimony. She read at least 100 pages of the memoir. He made it available. She read it. So that was part of the environment. Yes, Your Honor. But the portions of the book that Ms. Pollack cites as particularly sexually heightened were not read by Megan Young. They were read by... You're talking about page 570 and page 730 or whatever. Right, the particularly steamy parts. But still, I mean, the first 100 pages included inappropriate material for the classroom, as your client admitted. As you said, he apologized. So why shouldn't that go to the jury? Well, the question here today is whether there is an issue of material fact that there is a hostile environment. Simply by making the book available does not rise to the level of a hostile environment. A hostile environment is actually a very high standard to establish. A plaintiff has to prove that the environment was so bad that it actually changed the terms and conditions of her education. Does context matter? Does it matter that you're talking about a 16-year-old girl faced with a teacher in a public school?  That's central to our argument. The context here is a public school classroom, 20th century history. To say that a public school teacher in a 20th century history classroom cannot teach about the Gibson girls and about flappers... I don't think anybody's suggesting that he couldn't teach about the Gibson girls. The question isn't whether you can mention social change in the 20s or in the 60s and 70s. It's whether you have to show pictures of naked women or dead, beheaded naked women to do it. Whether you have to describe how the severed heads of Ed Gein's victims contained semen because he was having oral sex with the dead bodies. That's the question that's been put in front of us. It's not whether this was just a commentary about revolutionary changes in the 20th century. It's whether this fellow was consistently and regularly and obsessively talking about sexual and indeed morbidly sexual things in front of a bunch of 16-year-olds. Now, you say there's no factual issue in dispute here. Isn't the testimony of the plaintiff about how she perceived it, what the tone of voice was, what the gesture was when he touched her in the classroom, what the comment about, you know, what kind of underwear would you wear, Megan? Aren't those things that a jury ought to hear from the witness herself and weigh? Or is that something that is fair game for a district court judge to say, you know what, in context, not enough? Yes, you are going directly to that point. I think that a 20th century history teacher could also teach about the Holocaust without taking his students to the Holocaust Museum, but they do. And I think to limit the way that a public school teacher can teach a curriculum as the court is to create an environment of delusion and naivety in the public schools by telling a teacher that they can't teach the truth about the curriculum, that they have to somehow monitor their teaching. I think maybe we're talking a little past each other, but I share Judge Jordan's concern. We're not talking about what was the approved curriculum here. I think, at least myself, I'm concerned about the extracurricular information and indeed the things that your client admitted were wrong. So is it your argument that yes, those things were wrong, but they were episodic, and in context it wasn't enough to rise to what we all agree is a fairly high threshold for the environment to be so hostile? Right. Throughout the developing jurisprudence of hostile environment claims, the court has said time and time again that stray comments do not constitute a hostile environment. If anything here, my clients made stray comments that he himself, if he were here, would admit were inappropriate. Is there an issue of material fact to go to a jury on hostile environment? The district court correctly determined that there was not. But what about retaliation? Why isn't opposing counsel correct when she argues that a reasonable juror could conclude that your client, while on suspension, created a video regarding whistleblowers that was a clever way to signal to the other students in that class and perhaps the rest of the school that Ms. Young was going to suffer terribly for being a whistleblower? Well, I have two answers. One's very simple and procedural. The retaliation claim I think would be better for my co-defendant here to address because it was not brought against Bruce Smith. The only claim against Bruce Smith was hostile environment. The second level that I would add is that it's absolutely not retaliatory. It follows his curriculum that he's been teaching now for so many years. Had he ever presented that video before? Your Honor, I don't know that off the top of my head. Well, there's evidence that he hadn't, right? Right. Well, regardless, my argument here today is that does not impact my client. Okay. Because there is no retaliation claim lodged against my client. So he's only in legal jeopardy for the hostile environment. Yes, Your Honor, that's my understanding. Okay. All right. Thank you. Thank you. And Attorney Ginsberg. May it please the Court, Craig Ginsberg. I'm here on behalf of Pleasant Valley School District, John Dress, and Superintendent Pulo. I want to focus on the retaliation issues that have captured the Court's attention today and put it in more full context to show how my client simply did not retaliate against Megan Young or the Young family. Let's begin. Let's take it back to when this problem was first reported to the school, to Mr. Dress. The school immediately investigated this matter. And they didn't just investigate it superficially. When you look at the evidence. Well, I'm pretty sure we've all spent quite a bit of time on this record. Is it a fact that Mr. Dress, although he had told the Youngs that he would keep confidential, their reporting to him in fact told the teacher, Mr. Smith, it's the Youngs who have outed you here? No, that's not the record, Your Honor. I respectfully disagree. Well, that's what Mr. Smith said, didn't he? No, he didn't. In fact, in the second trial, he admitted that he lied to the Youngs when he called them. Well, when you say he admitted that he lied, he said, I was nervous and I said that. Right. But he's on record as having said it. So there's evidence in the record that Dress told Smith it's the Youngs. Now, he later recants, but there's evidence that could be put in front of a jury that Mr. Dress did that, correct? I would have to concede that Mr. Smith did testify to that fact. Okay. So isn't that a material dispute of fact that implicates whether your client, Mr. Dress, retaliated for the reporting? Well, I would have to concede that's one issue that was presented to the jury. The jury rejected that, yes. All right. So that went to the jury. But what about the ones that didn't go to the jury? And you're talking about? Pulo? Right. Pulo had final authority, did he not, over the showing of the whistleblower video? He had final authority in the sense of superintendent. He had approved the notion that teachers who are out, for whatever reason, whether it was suspension or whatever, could submit materials to their classes while they're out because that was to the benefit of their classes. Mr. Pulo, Dr. Pulo had no idea what was in the whistleblower video. There's no evidence. He talked to Mr. Smith about it. He simply approved the idea that Smith was going to be out for an extended period of time. Where does the buck stop? Right? Who vetted the video? The video was reviewed by Mr. Dress and also by Assistant Principal Hines. And this video was a video about Watergate, about Daniel Ellsberg. It's hard to believe that anybody at the school could understand anything was wrong with that video. This is a 20th century history class, and we're talking about Watergate and Daniel Ellsberg. Well, when you say it's hard to believe that anybody would think there was a problem, isn't a jury entitled to make a decision about whether timing of a newly created video that speaks of shunning whistleblowers is something that's causally related to the events that are happening in the school at that time? There was no showing that video was made pursuant to any school district policy to retaliate. And the question is, is this a retaliation claim? But they don't have to show that. I mean, that's an inference that jurors could draw, isn't it? Respectfully, I disagree. The claim that the plaintiffs were trying to prove is a retaliation claim. And the question is, was this video part of retaliation based on district policy or custom practice against the plaintiffs? And there was no evidence that that was the case. Oh, okay. So that's a different line of defense. You're saying this isn't a custom policy or practice. Right. I mean, this was. . . So then that argument presumes that perhaps this could have been Mr. Smith cleverly trying to retaliate against someone that he was upset with, but the school district can't be liable because it was an isolated incident. It wasn't part of a custom policy or practice. So under Monell, you prevail anyway. Is that your argument? That would be part of it, yes, Your Honor, because nobody at the school district put this video together. Nobody. . . There's no evidence that Mr. Grass or Superintendent Pulo or Assistant Principal Hines had anything to do with actually assembling the video. It came into the school. . . Is the school district not responsible for what Mr. Smith does? If Mr. Smith retaliates and they are conscious that the video was being shown, is there anything about Mr. Smith's behavior? Let me reframe it. Is the only way that the school district itself can be responsible for what Mr. Smith did is if there was a policy or practice, or is there another avenue through which Monell allows liability? You have to show. . . The plaintiffs had to show that this video was part of a retaliatory practice or custom policy. They're not. . . I'm sorry. If it was expressly approved by a decision maker, that would lead to liability, right? Not necessarily. Not unless it's shown that the district was engaging in a retaliatory action covered by Monell, as you said. I don't think you can get around that here. That's the claim that the plaintiffs made, and they're not responsible. . . But Smith could be liable had it been pleaded, right? Individually. Possibly, depending upon the claim made. But it just wasn't pleaded? No. What about the fact that the district court in the second trial directed the verdict for the school district and took that away from the jury? You're talking about the directed verdict on the claim against the district, yes? Yes. The district judge found correctly that there was no evidence that anything that Gress did rose to the level of being a policy or customer practice in the district. He's a principal. He didn't have that authority. The judge explained that. It's on the transcript of the colloquy between counsel and the judge. There was no evidence put there. Dr. Pulo was remote from anything to do with this video. I mean, he proved the general notion of teachers, any teacher, being able to submit material. So that was a custom policy or practice, the ability to submit a video, to teach remotely, so to speak? Right, where needed because teacher was out. That was a custom policy or practice. But what Judge Brand found was there was no evidence that that policy or practice was put into place or used to retaliate against the plaintiffs in the case. But ironically, it might have been used to facilitate an individual's teacher's efforts of retaliation. You'd have to concede that, wouldn't you? I don't concede that. Don't you have to allow for the possibility that Mr. Smith, while sitting there in Maryland with a dying mother, was probably pretty upset at his lot in life having been suspended? Don't you have to concede that he may have thought, ah, I'll show them? That's why he created this video. He had never shown that video before. Why is it that? He had shown somewhere, it was newly made, a newly made video about that subject. I believe he had taught on that subject before and maybe even done a video about it. But if this is retaliation, if this is all the plaintiffs have, this is the most subtle retaliation I've ever seen. This is a video coming into a school, being shown to a whole class, and the teacher is hoping that by watching that video, this student will understand that that video means, ah, you shouldn't have retaliated against me, you shouldn't have blown the whistle on me. That is really, really subtle retaliation. Is there a custom, policy, or practice problem with the school district permitting Mr. Smith to continue to create materials for presentation to the class after having been found by the investigation to have done prior curricula decisions, taken prior curricula decisions improperly, that is to have been out of bounds, and to have supposedly been under scrutiny when in fact he wasn't under scrutiny. I mean, there's evidence to show that they said, get your stuff approved, but in fact nobody was checking to see whether it was approved. Well, respectfully, I'm not sure I followed the question completely, but let me put it this way. Well, you're probably not the only one. I apologize for that. Let me do my best in answering that. As I said from the beginning, the district put a real clamp on Mr. Smith. Everything was reviewed. He had to report on what he was doing. Sure, there is evidence that there was some of that, or at least that from the plaintiff's perspective, I don't want to put words in Ms. Pollack's mouth, but I understood their argument to be, in essence, they papered it. The school district papered this thing upright, but when they said, hey, submit your materials for review, they didn't really review it, and in fact it was admitted that he was still doing stuff that was not being reviewed. And when it came time to defend Megan Young against retaliation within the school, they expressly stood behind the students who were doing the retaliating and saying, good for you, go stand up for what you believe, and they let her hang out to dry. These are the themes that are being played to us. If there's factual foundation in the record for those things, are they legally sufficient to make out a claim? No, Your Honor. There were a lot of things there. Let me try to apply it to one at a time. About the students, number one, this Court has held that the school district is not liable to protect a student against private individuals under the kind of claims brought in this case. That is the law in this circuit. And many of the threats, the really harmful ones, the really scary ones in the record, came from people who were unidentified on the Internet. What was the school district supposed to do about that? Holding a school district liable for comments made by unknown individuals on Internet blogs... How about holding them responsible for announcing over the loudspeaker, in essence, good for you for rallying behind Mr. Smith? All I can say with respect to that is that is not the record. The record is that the students were commended for not creating disorder in the school. They were not commended for punishing or going after a student. That is simply not the facts of this case. One more point, and this goes just briefly to something Ms. Collins talked about, with the teaching in the classroom. That teaching, the claim here is hostile environment based on gender. That class was males and females. Everything that Smith was teaching was taught to an entire class, not just Megan Young, of males and females, and that is a critical fact in this case, because their claim is based on an environment... Well, is your assertion that if you say something highly offensive... Just imagine something tremendously offensive, that if you say it in mixed company you're good because there are guys there too? I mean, is that the locker room defense? No, I'm not attempting to make a locker room defense. I'm simply trying to make sure that's clear on the record that we present the report today that what was happening here was happening to an entire class of both males and females. Let me ask you one question here on the second trial. On the second trial against the school district and Mr. Gress, Mr. Smith was out of it because of the summary judgment motion that had been granted, and the materials which had been offered into evidence and were part of the first trial were kept out of the second trial as a result of the motion in the limine which was granted by Judge Brandt. Correct. Okay. Why wasn't that... If we find the summary judgment motion was improperly granted, why wasn't that motion in limine improperly granted also? So I'm assuming now that the summary judgment that we're going to trial with Smith is part of the case? Yeah. Okay. Well, obviously it's much tougher to keep those things out then. I guess in other words, why wasn't it air to require Megan and the Youngs to go forward against the school district and Gress when she should have had the opportunity to go forward against all three of them and the juries would have seen the whole picture? Well, now we're getting into what my co-counsel talked about today. I understand that. Yeah. You can incorporate that by reference. Okay. What Judge Kain found was, this goes to what I was saying in response to Judge Jordan's questions, what Judge Kain found was that even though the material submitted or presented to the students was highly offensive in some respects, some of it had teaching value, okay, it was taught to a classroom of males and females, and also you had to factor in the idea that teachers need to have some freedom, they have some first amendment rights to teach in the classroom. So looking at all that, Judge Kain found that what happened in this classroom with regard to Mr. Smith simply didn't reach the high level, the really, really high level required to prove the hostile classroom environment that the plaintiffs were attempting to prove. Okay, that's the summary judgment motion. No, Judge Brand did that. You said Judge Kain. Judge Brand did that. Well, they both did it. I'm sorry, Eddie. No, no, Judge Brand did it. Judge Brand did it in the second trial, pardon me. Yeah. So Judge Brand basically found and agreed with Judge Kain, and he relied on that record, and he found that based on that record, he didn't meet that high level. He gave the plaintiffs an opportunity, this is critical, to submit additional evidence to show why was Judge Kain wrong in doing what she did, and he went through all that and found that she had an impact. Okay, but my question was if we find that was wrong, why shouldn't the youngs have the opportunity to try the case against your clients again? Well, using the materials. Using the materials. The issue for us is that the claims against the school district in Grass are retaliation claims, and those materials really don't help with that. They're irrelevant. Well, the Watergate video would come in, right? But the crude, crass, and obtuse materials that happened before she complained, those would not be part of the retaliation. That's your argument. Yeah, and I would agree with this much. Even though I'm arguing the materials need to be kept out, the youngs still have to be able to explain the context. Why are we here? And in the second trial, they were given that opportunity, even though the materials were kept out. Otherwise, why is the school district here? Right. And they explained that at length, and our brief deals with that, and Megan Young talked about it, and Patricia Young talked about it, and they talked about it in great detail. So the second jury, just getting, I'm going a little beyond the question, the second jury had every opportunity to understand why the school district was in the case. Well, I'm sorry, the other, the claims against the school district were not, correct me if I'm wrong, they were not only retaliation claims, were they? That's all that was left in the case that was tried. When you say that's all that was left, I'm talking about the operative pleading, the third amended complaint. The third amended complaint, doesn't that include? There was a failure to train claim that was dismissed. There were two hostile environment claims. Right. There were several retaliation claims. The hostile environment claim. Is only against Mr. Smith. Is against Mr. Smith, but there's a claim associated with hostile school environment. Under Title IX. Under Title IX, right? Which was? Against the school district. Right. So if the case goes back and it's determined that Judge Kain couldn't properly have converted what should have been a Rule 50 motion into a Rule 59 motion and assess the sufficiency of the evidence, is it fair to say that your clients could and should have to deal with those things in a retrial? I don't think so, because I think all the claims asserted here were retaliation against the school district. Well, there's a hostile environment Title IX claim asserted against your clients. Right. And that partakes of all of the evidence that Judge Fisher's been mentioning here, right? Yes, sir. You kind of put the rabbit in the hat, but I guess if all those things were to happen... All right. We understand your answer, and it was a complex question, so we understand. Thank you. All right. Thank you, Mr. Ginsberg. And Ms. Pollock, we'll have you back on rebuttal now. You already took a lot of your time, so I don't know that we're going to want to hear the entire thing. Go ahead. You can start. Thank you. We did show it was legally sufficient. Why? Because Judge Munley allowed us to proceed to a jury trial, and then eight people, eight normal people, heard all the evidence and concluded that for a hostile environment for the Meyer plaintiff and then on a retaliation claim. So we did show that there was proof. And under the... What question is that an answer to? Well, because legally sufficient, the court, Judge Cain was concerned about that. We legally didn't meet the high burden of a hostile educational environment, and we did, because it was up to the jury to decide. So you're talking about my question as to whether or not the jury should have been directed to return a verdict or the case should have been taken away from the jury, right? That and also Judge Jordan's with the fact if on the 59E, the court should have affirmed a verdict because of the fact that the defendants waived any of their arguments. Well, they didn't. They may have waived sufficient of the evidence arguments, but you have yet to respond to the assertion that attorney misconduct stands separate and apart from that. Judge Cain, even if she shouldn't have allowed a sufficiency of the evidence review, there's the question of whether the jury made a finding on, in essence, a polluted record. But you've talked about that at length in your opening, and I don't mean to sidetrack down the rebuttal. I am interested to hear your response to the assertion by the school district defendants that there's no showing here of a policy or practice, and therefore there was no basis for either a Title IX hostile environment claim or a retaliation claim. What's your response to their Monell argument? The Monell argument, number one, would be the school district actually approved the video, so that would be retaliation. Assume that's a one-off. You got anything else? They're talking about policy and practice here. What do you got? Policy and practice. The superintendent allowed an individual to out the plaintiffs. That was approved by the superintendent. Who outed the plaintiffs? Principal Gress. He outed the plaintiffs. Why? Because there's an e-mail. Smith admits that there was an e-mail he received from Gress. What have you got in the record? What do you got in the record that shows that Pulo even knew about that, let alone that he approved it? I have that he said there's an e-mail that he sends to Bruce Smith saying that, because Bruce was complaining, oh, is this someone that's going to be tattling back every time they find something offensive? And Superintendent Pulo says, everybody might not agree with my decision, but you have to be careful. That's pretty opaque. That's about as opaque as it gets. I don't understand how that puts the district, or I don't understand how that puts Pulo on the hook for what Gress did, assuming Gress did it. Okay. But isn't that up to a jury to decide? Because of the fact I have presented evidence. So a jury can conclude that there was a policy procedure accustomed. That's what we're trying to ask you. What is that evidence? What's the evidence of policy, practice, and procedure? That the homebound instruction was not sufficient. She had to actually go out and get a tutor. She presented that to Gress, complaining about it. Again, the whistleblower was specifically approved by the school district. Defendant Smith admitted everything he showed was approved by the school district. That is an official decision of practice. All right. Thank you. Ms. Pawlik, thank you very much. And we thank all counsel for their argument in this case. We understand the background of the case and a lot of different issues flying back and forth. Thanks for staying on point.